**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| LINDA and JOHN COX, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:20-cv-3609 |
| | § | |
| EQUIFAX INFORMATION | § | With Jury Demand Endorsed |
| SERVICES, LLC, EXPERIAN | § | |
| INFORMATION SOLUTIONS, INC., | § | |
| INNOVIS DATA SOLUTIONS, INC., | § | |
| TRANS UNION LLC, and | § | |
| NATIONSTAR MORTGAGE, LLC, | § | |
| Defendants. | § | |

**COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiffs, Linda and John Cox ("Plaintiffs"), by and through counsel, for their Complaint against Defendants, Equifax Information Services, LLC, Experian Information Solutions, Inc., Innovis Data Solutions, Inc., Trans Union, LLC, and Nationstar Mortgage, LLC, jointly, severally, and in solido, state as follows:

**I.   INTRODUCTION**

1.      Four of the Defendants are consumer reporting agencies ("CRAs") as defined by 15 U.S.C. § 1681a(f), and one Defendant, Nationstar Mortgage, LLC, is a furnisher of consumer information. All Defendants have violated 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act (the "FCRA"). Nationstar Mortgage, LLC, is also liable for violations of the Real

Estate Settlement Procedures Act ("RESPA") 12 U.S.C. §§ 2601–2617. Plaintiffs seek to recover from Defendants actual, statutory, and punitive damages, injunctive relief, legal fees, and expenses.

## II. PARTIES

2.      Plaintiffs, Linda and John Cox, are a married couple and natural persons residing in Wayne County, Michigan. They are "consumers," as defined by the FCRA, 15 U.S.C. § 1681a(c) and victims of repeated false credit reporting.

**Made Defendants herein are**:

3.      Upon information and belief, Equifax Information Services LLC, which may also hereinafter be referred to as "Equifax," "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants," does business in this judicial district and is a Georgia corporation with its principal place of business in Georgia. Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation.

4.      Upon information and belief, Experian Information Solutions, Inc., which may also hereinafter be referred to as "Experian", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants,", does business in this judicial district and is an Ohio corporation with its principal place of business in California. Experian is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by

15 U.S.C. § 1681a(f) to third parties. Experian disburses such consumer reports to third parties of contract for monetary compensation.

5.    Upon information and belief, Trans Union LLC, which may also hereinafter be referred to as "Trans Union", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants," does business in this judicial district and is a Delaware corporation with its principal place of business in Illinois. Trans Union is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

6.    Upon information and belief, Innovis Data Solutions, Inc., which may also hereinafter be referred to as "Innovis", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants," does business in this judicial district and is an unincorporated business with its principal place of business in Ohio. Innovis is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Innovis regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Innovis disburses such consumer reports to third parties of contract for monetary compensation.

7.    Upon information and belief, Nationstar Mortgage LLC or Mr. Cooper, which may also hereinafter be referred to as "Nationstar," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Texas corporation with its principal place of business in Texas and

may be served by delivering a summons to its Legal Department at Nationstar Headquarters, 8950 Cypress Waters Blvd, Coppell, TX 75019. Nationstar is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

8.      Nationstar is a servicer as defined by RESPA, 12 U.S.C. § 2605(i)(2).

9.      As used herein, "consumer reporting agency," or "CRA," means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports (commonly referred to as "credit reports") to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs specifically include, but are not limited to, Equifax, Experian, Innovis and TransUnion.

### III. JURISDICTION AND VENUE

10.     Plaintiffs respectfully assert that this Honorable Court has jurisdiction in this case which arises under federal law—28 U.S.C. § 1331; 15 U.S.C. § 1681(p); and 12 U.S.C. § 2614. Further, the amount in controversy exceeds $75,000.00, exclusive of costs and interest and the parties to these proceedings are citizens of different states. 28 U.S.C. § 1332. Plaintiffs also assert actions under states' laws which may be brought within the supplemental jurisdiction of this Court and Plaintiffs respectfully request that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. § 1367.

11.     Venue is proper in this District because the CRA Defendants and Nationstar transact

business in this District, Nationstar's headquarters is located in this judicial district, a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiff's claims against Defendants occurred in the Northern District of Texas as further described herein. 28 U.S.C. § 1391.

12.     Venue is further proper in this District because the CRA Defendants entered into agreements with Nationstar in this judicial district to receive credit reporting data concerning Plaintiffs. Any and all requests to investigate Plaintiffs' disputes sent from the CRA Defendants as part of their reinvestigation was submitted to Nationstar's headquarters and investigated by the furnisher Nationstar using Nationstar's resources located at or closely connected to this judicial district. Nationstar managed Plaintiffs' mortgage from this judicial district including communicating amounts owed, conducting numerous communications via phone and letter, and investigating Plaintiffs' written requests and responding thereto.

## IV.  FACTUAL ALLEGATIONS

13.     In August 2001, Plaintiffs secured a mortgage for their home at 2005 Alanson Street, Westland, Michigan.

14.     In approximately January 2013, the mortgage was purchased by, transferred to, or otherwise acquired by Nationstar.

15.     In October 2019, the mortgage was purchased by, transferred to or otherwise acquired by Fay Servicing LLC.

16.     In January 2020 and March 2020, Plaintiffs requested and received a copy of their respective credit reports assembled, evaluated, and disbursed by Equifax and noticed that their

Nationstar mortgage account was reporting inaccurately.

17.     Plaintiffs noticed multiple inaccuracies within their Equifax credit reports.  First, a "date of first delinquency" was reported as August 2018, though Nationstar processed  two $558.50 payments on July 20, 2018 and two payments of $668.64 in June 2018.  *See* Exhibit "A" (Nationstar Payment Hist.).  Second, the reports inaccurately displayed late payments in 2015, 2016 and 2017.  Finally, Equifax reported a conventional mortgage, though it is an FHA mortgage.

18.     A copy of Linda Cox's Equifax credit report is attached hereto as Exhibit "B".

19.     A copy of John Cox's Equifax credit report is attached hereto as Exhibit "C".

20.     In March 2020, Plaintiffs requested and received a copy of their credit reports assembled, evaluated, and disbursed by Innovis and noticed that their Nationstar mortgage account was reporting inaccurately.

21.     Plaintiffs noticed multiple inaccurately reported late payments within their Innovis credit reports.  For example, November 2018 reported timely, then December 2018 impossibly reported a 60-day late.  Innovis further failed to report Plaintiff's mortgage tradelines with Fay Servicing, though the mortgage was transferred to Fay Servicing in October 2019.

22.     A copy of Linda Cox's Innovis credit report is attached hereto as Exhibit "D".

23.     A copy of John Cox's Innovis credit report is attached hereto as Exhibit "E".

24.     In January and March 2020, Plaintiffs requested and received copies of their respective credit files assembled, evaluated, and disbursed by Trans Union and noticed that their Nationstar mortgage account was reporting inaccurately.

25.     Plaintiffs similarly noticed multiple inaccuracies within their Trans Union credit reports.  For example, November 2018 reported "OK" then December 2018 impossibly reported a

60 day late.  The scheduled payment for November 2018 was $588.00 and Nationstar processed a $558.50 on November 2, 2018 and again on November 30, 2018.  Plaintiffs next made a payment in the amount of $558.50 on January 1, 2019, yet the TransUnion credit report indicated Plaintiffs were $1,117.00 past due in December 2018, when they were $0 past due in November.  *See* Exhibit "A" (Nationstar Payment Hist.).  Additionally, the Nationstar mortgage reported as a conventional real estate mortgage, but the mortgage is FHA.

26.    A copy of Linda Cox's Trans Union credit report is attached hereto as Exhibit "F".

27.    A copy of John Cox's Trans Union credit report is attached hereto as Exhibit "G".

28.    In March 2020, Plaintiffs requested and received a copy of their credit reports assembled, evaluated, and disbursed by Experian and noticed that their Nationstar mortgage account was reporting inaccurately.

29.    Experian too was reporting Plaintiffs' Nationstar Mortgage account inaccurately. Experian incorrectly reported late payments for the years 2015, 2016, 2017, 2018, and 2019. Experian also improperly reported a balloon payment obligation on Plaintiffs' Fay Servicing tradeline.

30.    A copy of Linda Cox's Experian credit report is attached hereto as Exhibit "H".

31.    A copy of John Cox's Experian credit report is attached hereto as Exhibit "I".

32.    On or about May 14, 2020, Plaintiffs disputed the reporting of the Nationstar mortgage account with Equifax, Experian, Innovis and Trans Union (collectively the "CRA Defendants") directly. Attached to the dispute letters, Plaintiffs included documentary evidence of Plaintiffs' timely payment history.  Plaintiffs requested that under the FCRA, each CRA Defendant conduct a reasonable investigation and/or remedy the inaccuracies on Plaintiffs' credit reports

concerning their mortgage account.

33.     On May 21, 2020 Equifax responded to John Cox, stating they were unable to locate a credit filed in their database with the identification provided, and requested that he provide a pay stub, W-2 form, or valid social security card along with another item containing his mailing address.

34.     Equifax had no reasonable basis to question Mr. Cox's identity nor is it reasonable to request these sensitive documents be sent through the mail in response to a consumer request.

35.     Equifax failed to respond to Ms. Cox's dispute letter in violation of 15 U.S.C. § 1681i(a).

36.     Upon the Plaintiffs' request to Equifax for verification and addition regarding the Nationstar mortgage account, Equifax failed to perform any investigation.

37.     In the alternative, and in accordance with Equifax's standard procedures, Equifax did not evaluate or consider any of Plaintiffs' information, claims, or evidence. Importantly, Equifax failed to maintain procedures which would ensure that, if any investigation took place, it would provide Plaintiffs with a response communicating the results. Further, Equifax did not make any attempts to substantially or reasonably verify the Nationstar reporting lines.

38.     In the alternative to the allegation that Equifax failed to contact Nationstar, it is alleged that Equifax did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

39.     Experian responded to both Plaintiffs' disputes on or about June 6, 2020.

40.     A copy of Experian's response letter to Plaintiff Linda Cox is attached hereto as Exhibit "J" and incorporated herein by reference.

41.     A copy of Experian's response letter to Plaintiff John Cox is attached hereto as

Exhibit "K" and incorporated herein by reference.

42.     In its response letters to Plaintiffs Plaintiff, though Experian indicated that the disputed item had been updated, inaccuracies remained.  Experian provided no revision with respect to the Fay Servicing tradeline or explanation as to why a balloon payment was reporting.  Further, Experian continued to inaccurately report late payments from 2015 – 2019 in regards to the Nationstar Mortgage account.  Experian chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiffs' Nationstar mortgage account.

43.     Upon the Plaintiffs' request to Experian for verification and addition regarding the Nationstar mortgage account, Experian failed to perform any investigation.

44.     In the alternative, and in accordance with Experian's standard procedures, Experian did not evaluate or consider any of Plaintiffs' information, claims, or evidence. Importantly, Experian failed to maintain procedures which would ensure that, if any investigation took place, it would provide Plaintiffs with a response communicating the results. Further, Experian did not make any attempts to substantially or reasonably verify the Nationstar reporting lines.

45.     In the alternative to the allegation that Experian failed to contact Nationstar, it is alleged that Experian did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

46.     Innovis responded to both Plaintiffs' disputes on or about June 12, 2020.

47.     A copy of Innovis's response letter to Plaintiff Linda Cox is attached hereto as Exhibit "L" and incorporated herein by reference.

48.     A copy of Innovis's response letter to Plaintiff John Cox is attached hereto as Exhibit

"M" and incorporated herein by reference.

49.     In its response letters to Plaintiffs, Innovis informed Plaintiffs that the Nationstar tradeline had been deleted from their respective credit reports.  Innovis further stated that the Fay Servicing tradeline was no longer on Plaintiffs' respective credit reports. Innovis chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiffs' accounts.

50.     Upon the Plaintiffs' request to Innovis for verification and addition regarding their mortgage account, and in accordance with Innovis's standard procedures, Innovis did not evaluate or consider any of Plaintiffs' information, claims, or evidence. Nor did Innovis make any attempts to substantially or reasonably verify the reporting lines.  Rather, Innovis deleted tradelines against Plaintiffs' wishes.  Plaintiffs requested accurate reporting, not deletion.

51.     In the alternative, Innovis failed to contact Nationstar and Fay Servicing and failed perform an investigation.

52.     In the alternative to the allegation that Innovis failed to contact Nationstar and Fay Servicing, it is alleged that Innovis did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

53.     Trans Union responded to Plaintiff John Cox's dispute on or about June 12, 2020. Trans Union responded to Mr. Cox by informing him the disputed information had been updated. However, each of the errors Plaintiff highlighted in his dispute letter remained inaccurate in Trans Union's investigation results.

54.     A copy of Trans Union's response letter to Mr. Cox is attached hereto as Exhibit "N", respectively, and incorporated herein by reference.

55. Trans Union failed to respond to Plaintiff Linda Cox in violation of 15 U.S.C. § 1681i(a). After receiving no response from Trans Union, Ms. Cox sent a second dispute letter on August 3, 2020.

56. Trans Union responded to Ms. Cox's August 3, 2020 dispute letter on or about August 14, 2020. Therein, Trans Union wrote, "we found the information you disputed does not currently appear on your TransUnion credit report."

57. Trans Union's August 14, 2020 response to Ms. Cox is attached hereto as Exhibit "O" and incorporated herein by reference.

58. Plaintiffs' dispute letters to Trans Union were identical, but Trans Union's responses were inconsistent. In response to Ms. Cox, Trans Union deleted the Nationstar tradeline. Ms. Cox did not request deletion, she requested accurate reporting which reflected her true credit worthiness. In response to Mr. Cox, Trans Union did not delete the Nationstar tradeline, yet continued to report inaccurately. In both instances, Trans Union chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiffs' Nationstar mortgage account.

59. Upon the Plaintiffs' request to Trans Union for verification and addition regarding the Nationstar mortgage account, and in accordance with Trans Union's standard procedures, Trans Union did not evaluate or consider any of Plaintiffs' information, claims or evidence and did not make any attempt to substantially or reasonably verify the Nationstar reporting lines.

60. In the alternative, Trans Union failed to contact Nationstar and failed to perform an investigation.

61. In the alternative to the allegation that Trans Union failed to contact Nationstar, it is

alleged that Trans Union did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

62.     After the CRAs notified Nationstar of the disputed tradeline involving the Nationstar mortgage account, Nationstar failed to change or correct any of the information. Instead, Nationstar reaffirmed and continued to furnish to the CRAs incorrect, misleading, and damaging information about Plaintiffs' mortgage account.

## V.  GROUNDS FOR RELIEF

### COUNT I – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. § 1681e(b))

63.     The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

64.     Equifax violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiffs.

65.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

66.     Plaintiffs provided their mortgage payments to Equifax and furnished Equifax the necessary documentation supporting Plaintiffs' tradeline, yet Equifax continued to prepare a patently false consumer report concerning Plaintiffs.

67.     Despite actual and implied knowledge that Plaintiffs' credit report was and is not accurate, Equifax readily provided false reports to one or more third party, thereby misrepresenting Plaintiffs, and ultimately Plaintiffs' creditworthiness.

68.     As a result of Equifax's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

69.     Equifax's conduct, action, and inaction, were willful, rendering it liable to Plaintiffs for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiffs to recover under 15 U.S.C. § 1681o.

70.     The Plaintiffs are entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT II – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

71.     The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

72.     Equifax violated 15 U.S.C. § 168li on multiple occasions by failing to delete inaccurate information in the Plaintiffs' credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to Nationstar, Inc., failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiffs' credit file, and relying upon verification from a source it has reason to know is unreliable.

73.     As a result of Equifax's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

74.     Equifax's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

75.     The Plaintiffs are entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT III – EXPERIAN'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

76.     The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

77.     Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiffs.

78.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

79.     Plaintiffs provided their mortgage payments to Experian and furnished Experian the necessary documentation supporting Plaintiffs' tradeline, yet Experian continued to prepare a patently false consumer report concerning Plaintiffs.

80.     Despite actual and implied knowledge that Plaintiffs' credit report was and is not accurate, Experian readily provided false reports to one or more third party, thereby misrepresenting Plaintiffs, and ultimately Plaintiffs' creditworthiness.

81.     As a result of Experian's conduct, action, and inaction, the Plaintiffs suffered

damages, including, but not limited to, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

82.     Experian's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent, entitling the Plaintiffs to recover under 15 U.S.C. § 1681o.

83.     The Plaintiffs are entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

### COUNT IV – EXPERIAN'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

84.     The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

85.     Experian violated 15 U.S.C. § 1681i on multiple occasions by failing to delete inaccurate information in the Plaintiffs' credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to Nationstar, Inc., failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiffs' credit file, and relying upon verification from a source it has reason to know is unreliable.

86.     As a result of Experian's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

87.     Experian' s conduct, action, and inaction, were willful, rendering it liable for actual

or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

88.     The Plaintiffs are entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT V – INNOVIS' VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

89.     The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

90.     Innovis violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiffs.

91.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

92.     Plaintiffs provided their mortgage payments to Innovis and furnished Innovis with the necessary documentation supporting Plaintiffs' tradeline, yet Innovis continued to prepare a patently false consumer report concerning Plaintiffs.

93.     Despite actual and implied knowledge that Plaintiffs' credit report was and is not accurate, Innovis readily provided false reports to one or more third party, thereby misrepresenting Plaintiffs, and ultimately Plaintiffs' creditworthiness.

94.     As a result of Innovis's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, loss of credit, loss of the ability to purchase and benefit from a credit,

and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

95.    Innovis's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent, entitling the Plaintiffs to recover under 15 U.S.C. § 1681o.

96.    The Plaintiffs are entitled to recover costs and attorney's fees from Innovis in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

### COUNT VI – INNOVIS' VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

97.    The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

98.    Innovis violated 15 U.S.C. § 1681i on multiple occasions by failing to delete inaccurate information in the Plaintiffs' credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to Nationstar, Inc., failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiffs' credit file, and relying upon verification from a source it has reason to know is unreliable.

99.    As a result of Innovis's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

100.    Innovis's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to

15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

101.    The Plaintiffs are entitled to recover costs and attorney's fees from Innovis in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT VI – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

102.    The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

103.    Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiffs.

104.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

105.    Plaintiffs provided their mortgage payments to Trans Union and furnished Trans Union the necessary documentation supporting Plaintiffs' tradeline, yet Trans Union continued to prepare a patently false consumer report concerning Plaintiffs.

106.    Despite actual and implied knowledge that Plaintiffs' credit report was and is not accurate, Trans Union readily provided false reports to one or more third party, thereby misrepresenting Plaintiffs, and ultimately Plaintiffs' creditworthiness.

107.    As a result of Trans Union's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of

credit denials.

108.     Trans Union's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §  168ln. In the alternative, such conduct, action, and inaction were negligent, entitling the Plaintiffs to recover under 15 U.S.C. § 1681o.

109.     The Plaintiffs are entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

### COUNT VII – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

110.     The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

111.     Trans Union violated 15 U.S.C. § 1681i on multiple occasions by failing to delete inaccurate information in the Plaintiffs' credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to Nationstar, Inc., failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiffs' credit file, and relying upon verification from a source it has reason to know is unreliable.

112.     As a result of Trans Union's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

113.     Trans Union's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent

entitling the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

114.    The Plaintiffs are entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT VIII – NATIONSTAR'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681s-2(b))

115.    Defendant Nationstar violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiffs' dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify, delete, and/or block the information.

116.    Nationstar further violated 15 U.S.C. § 1681s-2(b) by continuing to report the Nationstar representation within Plaintiffs' credit file with the CRA Defendants without also including a notation that this debt was disputed, failing to fully and properly investigate the Plaintiffs' dispute of the Nationstar representation, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Nationstar representations to the consumer reporting agencies.

117.    As a result of Nationstar's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

118.    Nationstar's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiffs to recover actual damages under

15 U.S.C. § 1681o.

## VI.  VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

119.    Plaintiffs will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principals, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondent superior and/or vicarious liability.

## VII. DAMAGES

120.    Plaintiffs respectfully request that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the FCRA, RESPA, and/or states' laws, including Texas.

121.    Plaintiffs respectfully request that this Honorable Court award Plaintiffs their litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in accordance with the provisions of the FCRA, RESPA, and/or other laws.

122.    The above and foregoing actions, inactions, and fault of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiffs.

123.    Defendants performed perfunctory and essentially useless reinvestigations resulting in the verification of false reportings about the Plaintiffs and have been a substantial factor in causing credit denials and other damages.

124.    Plaintiffs suffered a variety of damages, including economic and non-economic damages as prayed for herein.

125.    Defendants have negligently and/or willfully violated various provisions of the FCRA and/or RESPA and are thereby liable unto Plaintiffs.

126.    Defendants are liable unto Plaintiffs for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, attorney's fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.


WHEREFORE PREMESIS CONSIDERED, Plaintiffs, Linda and John Cox, pray that this Honorable Court:

A.    Enter Judgment in favor of Plaintiffs and against Defendants Equifax Information Services, LLC, Experian Information Solutions, Inc., Innovis Data Solutions, Inc., Trans Union, LLC, and Nationstar Mortgage, LLC, jointly, severally, and in solido, for all reasonable damages sustained by Plaintiffs, including, but not limited to, actual damages, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security for Defendants' violations of the FCRA, applicable state law, and common law;

B.    Find that the appropriate circumstances exist for an award of punitive damages to

Plaintiffs;

      C.     Award Plaintiffs pre-judgment and post-judgment interest, as allowed by law;

      D.     Order that the CRA Defendants, Equifax Information Services, LLC, Experian Information Solutions, Inc., Innovis Data Solutions, Inc., Trans Union, LLC, and Furnisher Defendant, Nationstar Mortgage, LLC, work in conjunction, cooperatively, and/or individually to reinvestigate and correct the consumer report(s), credit report(s), data emanations, consumer histories, and credit histories of and concerning Plaintiffs and/or any of Plaintiffs' personal identifiers.

      E.     Grant such other and further relief, in law or equity, to which Plaintiffs might show they are justly entitled.


DATE: <u>December 10, 2020</u>          Respectfully submitted,

                    */s/ Matthew P. Forsberg*
                    Matthew P. Forsberg
                    MN State Bar Number 0400067
                    Matt@FieldsLaw.com
                    FIELDS LAW FIRM
                    9999 Wayzata Blvd.
                    Minnetonka, Minnesota 55305
                    (612) 383-1868 (telephone)
                    (612) 370-4256 (fax)

                    By: */s/ Jonathan A. Heeps*
                    Jonathan A. Heeps
                    State Bar No. 24074387
                    LAW OFFICE OF JONATHAN A. HEEPS
                    Post Office Box 174372
                    Arlington, Texas 76003
                    Telephone (682) 738-6415
                    Fax (844) 738-6416
                    jaheeps@heepslaw.com

COUNSEL FOR PLAINTIFFS

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

<u>December 10, 2020</u>                    */s/ Matthew P. Forsberg*
Date                                                Matthew P. Forsberg